IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CIVIL CASE NO.:

THE CINCINNATI INSURANCE COMPANY,

                Plaintiff,

vs.

BENZEL'S BRETZEL BAKERY, INC.,
and ROMINA RANIERI,

                Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, THE CINCINNATI INSURANCE COMPANY ("CIC"), files this complaint for Declaratory Judgment alleging:

### Jurisdiction, Venue and Applicable Law

1.      Plaintiff brings this declaratory judgment action pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights surrounding questions of actual controversy that exist between Plaintiff and Defendants.

2.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      At all times material to this action, Plaintiff, CIC, was a corporation organized and existing under the laws of Ohio with its principal place of business in Ohio.

4.     At all times material to this action, Defendant, BENZEL'S BRETZEL BAKERY, INC. ("BENZEL'S") was a corporation organized and existing under the laws of Pennsylvania with its principal place of business in Pennsylvania.

5.     At all times material to this action, Defendant, ROMINA RANIERI ("RANIERI"), an individual who was more than 18 years old, was a citizen of Florida and residing in West Palm Beach, Florida.

6.     Venue is proper in the West Palm Beach Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391 because all events or omissions giving rise to this claim occurred in this district.

7.     CIC issued the insurance policies at issue in this case to BENZEL'S, a Pennsylvania corporation, in Pennsylvania so Pennsylvania law applies.

**Allegations of the Underlying Complaint**

8.     Defendant RANIERI is a claimant and a potential plaintiff in a putative class action lawsuit entitled *Romina Ranieri v. Benzel's Bretzel Bakery, Inc.* ("Underlying Lawsuit").  The Underlying Lawsuit is attached as Exhibit A.

9.     RANIERI alleges in the Underlying Lawsuit that BENZEL'S has "unlawfully, fraudulently, unfairly, misleadingly, and deceptively represented that its Pennysticks® Brand pretzels (the 'Product') are 'All Natural,' despite the pretzels containing unnatural, synthetic, artificial, and/or genetically modified ingredients, including Soybean Oil." See Exhibit A at ¶ 1.

10.     RANIERI further alleges that BENZEL'S knowingly, recklessly and/or negligently markets and sells the Product as being "All Natural."  See Exhibit A at ¶ 2.

2

11.     RANIERI also alleges that "almost [sic] soy grown or made in the United States is derived from seeds that have been genetically modified . . . and as such, almost all soy-based ingredients in the United States are in fact unnatural, synthetic, artificial, and genetically modified ingredients."  See Exhibit A at ¶ 22.

12.     RANIERI further alleges that BENZEL'S manufactures, distributes, markets, advertises, and sells the Product, claiming the Product is "All Natural," when in fact, the Product contains unnatural, synthetic, artificial, and/or genetically modified ingredients, including Soybean Oil, so the Product is not "All Natural."  See Exhibit A at ¶ 23.

13.     As a result, BENZEL'S "All Natural" claim is "untrue, misleading and likely to deceive reasonable consumers and members of the Class."  See Exhibit A at ¶ 24.

14.     RANIERI claims that BENZEL'S sells the Product at a premium price, above other similar products in the marketplace that do not claim to be "All Natural." See Exhibit A at ¶ 26.

15.     RANIERI alleges that, in making the false, misleading, and deceptive representations and omissions, "[BENZEL'S] knew and intended that consumers would pay a price premium for the Product over comparable products that are not labeled 'All Natural,' furthering [BENZEL'S] private interest of increasing sales for the Product, and decreasing the sales of products by [BENZEL'S] competitors that do not claim to be 'All Natural.'"  See Exhibit A at ¶ 38.

16.     RANIERI alleges that, as a direct and proximate result of BENZEL'S false, misleading, and deceptive representations and omissions, BENZEL'S "injured Plaintiff and the other Class members in that Plaintiff and other Class members:

1)    paid a sum of money for the Product that was not as represented;

2)    paid a premium price for the Product that was not as represented;

3)    were deprived the benefit of the bargain because the Product they purchased was different than what Defendant warranted;

4)    were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

5)    did not receive a Product that measured up to their expectations as created by Defendant;

6)    ingested substances that were other than what was represented by Defendant;

7)    ingested substances that Plaintiff and the other members of the Class did not expect or consent to;

8)    ingested substances that are artificial, synthetic, genetically modified, or otherwise unnatural;

9)    ingested substances that were of a lower quality than what Defendant promised;

10)   were denied the benefit of knowing what they ingested;

11)   were denied the benefit of truthful food labels;

12)   were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

13)   were denied the benefit of the beneficial properties of the natural foods promised."

See Exhibit A at ¶ 39.

17.    RANIERI further alleges that, had BENZEL'S not made the false, misleading, and deceptive representations and omissions, RANIERI and the other Class members would not have been economically injured because RANIERI and the other Class members would not have purchased the Product.  See Exhibit A at ¶ 40.

4

18.     RANIERI and the other Class members have allegedly suffered injury in fact and lost money or property as a result of BENZEL'S "wrongful conduct."  See Exhibit A at ¶ 41.

19.     RANIERI contends that she and the other Class members did not obtain the full value of the advertised Product due to BENZEL'S misrepresentations and/or omissions.  See Exhibit A at ¶ 42.

20.     RANIERI'S first cause of action alleges violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Plaintiff alleges that BENZEL'S "violated FDUTPA by engaging in the unfair and deceptive practices" in that BENZEL'S "has represented that the Product is 'All Natural' when in fact, the Product is made with Soybean Oil."  See Exhibit A at ¶¶ 78-79.

21.     RANIERI'S second cause of action alleges negligent misrepresentation in that BENZEL'S "negligently represented that the Product is 'All Natural.'"  See Exhibit A at ¶ 88.  BENZEL'S has omitted that the "Product contains unnatural, synthetic, artificial, and/or genetically modified ingredients, despite claiming that the Product is 'All Natural.'"  See Exhibit A at ¶ 92.

22.     RANIERI alleges that, as a direct and proximate result of BENZEL's misrepresentations, she and the other Class Members allege they were induced to purchase BENZEL'S pretzels and they suffered "damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain because they brought a Product that was not what it was represented to be. . .." See Exhibit A at ¶ 97.

5

23.     RANIERI'S third cause of action alleges breach of express warranty. RANIERI alleges that BENZEL'S "has expressly represented that the Product is 'All Natural' when in fact, the Product is made with Soybean Oil."  See Exhibit A at ¶ 100. BENZEL'S allegedly "breached its express warranty by claiming that the Product is 'All Natural' because the Product contains unnatural, synthetic, artificial, and/or genetically modified ingredients."  See Exhibit A at ¶ 103.

24.     RANIERI seeks "all available remedies, damages, and awards as a result of [BENZEL'S] breach of express warranty."  See Exhibit A at ¶ 106.

25.     RANIERI'S fourth cause of action alleges BENZEL'S violation of the Magnuson-Moss Warranty Act.   RANIERI alleges that BENZEL'S "has expressly represented that the Product is 'All Natural' when in fact the Product is made with Soybean Oil."   See Exhibit A at ¶ 109.   Because of BENZEL'S alleged breach of express warranty, BENZEL'S violated RANIERI'S statutory rights pursuant to the Magnuson-Moss Warranty Act.  See Exhibit A at ¶ 113.

26.     RANIERI'S fifth cause of action alleges unjust enrichment.   RANIERI alleges that BENZEL'S profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of RANIERI and the other Class members under which it would be unjust for BENZEL'S to retain the benefit.  See Exhibit A at ¶ 121.

27.     RANIERI seeks an award of equitable relief for all causes of action as follows:

(a)     Enjoining BENZEL'S from continuing to engage, use, or
        employ any unfair and/or deceptive business acts or
        practices related to the design, testing, manufacture,

6

  assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in the detail above, or from making any claims found to violate FDUTPA or the other causes of action as set forth above;

(b) Requiring BENZEL'S to make full restitution of all monies wrongfully obtained as a result of the conduct described in the Complaint;

(c) Restoring all monies that may have been acquired by BENZEL'S as a result of such unfair and/or deceptive act or practices; and

(d) Requiring BENZEL'S to disgorge all ill-gotten gains flowing from the conduct described herein.

See Exhibit A, p. 20 at ¶ 2.

  28. RANIERI also seeks actual damages in an amount to be determined at trial for all the causes of action.  See Exhibit A, p. 20 at ¶ 3.

**Primary Insurance Policy**

  29. CIC issued a primary commercial general liability insurance policy, policy number CPP 108 78 00, to BENZEL'S (the "Primary Policy").  The Primary Policy incepted on May 18, 2013 and was in force according to its terms and conditions through May 18, 2016.  A copy of the Primary Policy is attached as Exhibit B.

  30. The Primary Policy has the following language, in relevant part:

***

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; . . .

***

**2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Expected or intended injury**
[deleted and replaced by Pennsylvania Amendatory Endorsement as follows]

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

    **k.**    **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

***

    **t.**    **Distribution of Material in Violation of Statutes**

8

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*\*\*

**c.**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

**1.**    "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.   "Advertisement" includes a publicity article.  For purposes of this definition:

   **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an "advertisement".

\*\*\*

**4.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

9

17.    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

***

20.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

25.    "Your product":

    **a.**    Means:

10

**(2)**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **(a)**   You;

    **(b)**   Others trading under your name; or

    **(c)**   A person or organization whose business or assets you have acquired; and

**(3)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**   Includes:

**(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**   The providing of or failure to provide warnings or instructions.

***

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**   **Insuring Agreement**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

***

**b.**   This insurance applies to "personal and advertising injury" only if:

11

    **(1)**    The "personal and advertising injury" is caused by an offense arising out of your business; and

    **(2)**    The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

    **(3)**    Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

***

**2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Knowing Violation of Rights of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

    **b.**    **Material Published With Knowledge of Falsity**

    "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

***

    **g.**    **Quality or Performance of Goods – Failure to Conform to Statements**

    "Personal and advertising" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

***

    **s.**    **Distribution of Material in Violation of Statutes**

12

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\*\*\*

**c.**     Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

\*\*\*

### Umbrella Policy

31.     CIC also issued a commercial umbrella liability insurance policy, policy number CPP 108 78 00, to BENZEL'S (the "Umbrella Policy").  The Umbrella Policy incepted on May 18, 2013 and was in force according to its terms and conditions through May 18, 2016.  See Exhibit B.

32.     The Umbrella Policy has the following language, in relevant part:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM**

**SECTION I – COVERAGE**

**A.     Insuring Agreement**

   **1.**     We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury," "personal and advertising injury" or "property damage" to which this insurance applies:

   **a.**     Which is in excess of the "underlying insurance"; or

   **b.**     Which is either excluded or not insured by "underlying insurance".

   **2.**     This insurance applies to "bodily injury", "personal injury" or "property damage" only if:

**a.**     The "bodily injury", "personal injury and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**b.**     The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

**c.**     The "personal and advertising injury' results from an "occurrence" that takes place during the policy period shown in the Declarations; and

**d.**     Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

**3.**     "Bodily injury" or "property damage" which:

**a.**     Occurs during the "coverage term"; and

**b.**     Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

\*\*\*

**4.**     "Personal and advertising injury" caused by an offense which:

**a.**     Was committed during the "coverage term"; and

**b.**     Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed; . . .

\*\*\*

**B.     Exclusions**

This insurance does not apply to:

\*\*\*

14

**2.      Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and advertising injury":

*  *  *

**b.**      Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**c.**      Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

**d.**      Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

*  *  *

**6.      Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

*  *  *

**8.      Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

*  *  *

**c.**      Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*  *  *

**13.      Expected or Intended injury**

"Bodily injury" or "property damage' which may reasonably be expected to result from the intentional or criminal acts of the

insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property"; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger in the operation of "autos" or watercraft.

*** 

14. **Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

a. Arising out of oral or written material, if done by or at the direction of the insured with knowledge of its falsity;

b. Arising out of oral or written publication or material whose firs publication took place before the latter of the following:

(1) The inception of this Coverage Part; or

(2) The "coverage term" in which insurance coverage is sought.

*** 

**SECTION V – DEFINITIONS**

*** 

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article.   For the purposes of this definition:

a. Notices that are published include material placed on the internet or on similar electronic means of communication; and

16

     **b.**     Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supports is considers an "advertisement".

***

**5.**     "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

***

**16.**     "Occurrence" means:

     **a.**     An accident, including continuous or repeated exposure to the substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

     **b.**     An offense that results in "personal and advertising injury".

     All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

     **(1)**     The frequency of repetition;

     **(2)**     The number or kind of media used; or

     **(3)**     The number of claimants.

**17.**     "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

     **a.**     False arrest, detention or imprisonment;

     **b.**     Malicious prosecution;

     **c.**     Abuse of process;

     **d.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

17

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e.**   Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**f.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.**   The use of another's advertising ideas in your "advertisement"'

**h.**   Infringing upon another's copyright, trade dress or slogan in your "advertisement";  or

**i.**   Discrimination, unless insurance coverage therefor is prohibited by law or statute.

\*\*\*

**20.**   "Property damage" means:

**a.**   Physical injury to or destruction of tangible property including all resulting loss of use.  All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

**b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

**24.**   "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise.  "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I – COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

\*\*\*

18

**25.** "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

*** 

**28.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

        **(2)** The providing of or failure to provide warnings or instructions.

*** 

## Request for Declaratory Judgment

33.    CIC seeks a declaration that the Primary Policy does not require CIC to defend or indemnify BENZEL'S against the Underlying Lawsuit.

34.     CIC also seeks a declaration that the Umbrella Policy does not require CIC to defend or indemnify BENZEL's against the Underlying Lawsuit.

35.     As more particularly set forth in the counts below, based upon the allegations of the Underlying Lawsuit, there are provisions, terms, conditions and/or exclusions in the Primary Policy and Umbrella Policy which do not provide or otherwise operate to preclude coverage for BENZEL'S.

36.     There exists an actual, present and practical need for a declaration of coverage under the Primary Policy and Umbrella Policy and the rights and obligations of CIC.

37.     All proper and present antagonistic or adverse interests are before the Court by proper process.

<u>**COUNT I**</u>
<u>**DECLARATORY JUDGMENT THAT THE PRIMARY POLICY DOES NOT PROVIDE COVERAGE AGAINST THE UNDERLYING LAWSUIT**</u>

38.     CIC re-alleges and incorporates the allegations contained in paragraphs 1 through 37 above.

39.     Coverage A under the Commercial General Liability Form in the Primary Policy provides that CIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"  See Exhibit B.

40.     The Primary Policy requires an "occurrence" that causes "bodily injury" or "property damage."  See Exhibit B.

41.     The Primary Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Exhibit B.

20

42.     The Underlying Lawsuit does not allege an "occurrence."

43.     The Primary Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

44.     The Underlying Lawsuit also does not allege "bodily injury."

45.     The Primary Policy defines "property damage" as:

>    **a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss shall be deemed to occur at the time of the physical injury that caused it; or
>
>    **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

46.     The Underlying Complaint does not allege "property damage."

47.     Economic damages alleged in the Underlying Lawsuit do not comprise "property damage."

48.     Even if the Underlying Complaint had alleged an "occurrence" that caused "bodily injury" or "property damage," several exclusions would apply.

49.     The "Expected or Intended Injury" exclusion under Coverage A applies because the Underlying Lawsuit alleges that BENZEL'S "knew and intended" that consumers would pay a price premium for the Product over comparable products that are not labeled "All Natural."

50.     The "Damage to Your Product" exclusion under Coverage A applies insofar as the Primary Policy defines "your product" to mean "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by (a) You," and also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'"

21

51.     The "Damage to Your Product" exclusion applies because the Underlying Lawsuit is premised upon "[w]arranties or representations made [by BENZEL'S]. . .with respect to the fitness, quality, performance or use of [BENZEL'S] product."

52.     The "Distribution of Material in Violation of Statutes" exclusion under Coverage A applies to the allegations that BENZEL'S violated Florida's Deceptive and Unfair Trade Practices Act and the Magnuson-Moss Warranty Act.

53.     Coverage B under the Commercial General Liability Form in the Primary Policy provides that CIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."

54.     Coverage B applies only if "[t]he 'personal and advertising injury' is caused by an offense arising out of your business."

55.     The Primary Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

      a.      False arrest, detention or imprisonment;

      b.      Malicious prosecution;

      c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

      d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;

22

     f.     The use of another's advertising idea in your 'advertisement'; or

     g.     Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

***

56.    The Underlying Lawsuit does not allege anything that falls within the enumerated offenses that comprise the definition of "personal and advertising injury."

57.    Even if the Underlying Lawsuit had alleged "personal and advertising injury," several exclusions would apply.

58.    The "Knowing Violation of Rights of Another" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S knowingly deprived Plaintiff and the other Class members of the benefit of their bargain because they bought the Product that was not what BENZEL'S represented it to be and BENZEL'S violated RANIERI'S statutory rights under the Magnuson-Moss Warranty Act.

59.    The "Material Published With Knowledge of Falsity" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S represented that the Product was "All Natural" when BENZEL'S knew it was not.

60.    The "Quality of Performance of Goods – Failure to Conform to Statements" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S represented that the Product was "All Natural" when the Product was not.

61.    The "Distribution of Material in Violation of Statutes" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S violated Florida's Deceptive and Unfair Trade Practices Act and the Magnuson-Moss Warranty Act.

23

WHEREFORE, CIC seeks a judgment in its favor, declaring and adjudicating that the Primary Policy does not provide insurance coverage against the Underlying Complaint so CIC has no duty to defend and no duty to indemnify BENZEL'S with respect to the Underlying Lawsuit.

### COUNT II
### DECLARATORY JUDGMENT THAT THE UMBRELLA POLICY DOES NOT PROVIDE COVERAGE AGAINST THE UNDERLYING COMPLAINT

62.    CIC re-alleges and incorporates the allegations contained in paragraphs 1 through 37 above.

63.    The Umbrella Policy provides that CIC "will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for 'bodily injury', personal and advertising injury' or 'property damage' to which this insurance applies: **a.** Which is in excess of the 'underlying insurance'; or **b.** Which is either excluded or not insured by 'underlying insurance'."

64.    Coverage under the Umbrella Policy applies only if the "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence."

65.    The Umbrella Policy defines "occurrence" as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage; or [a]n offense that results in 'personal and advertising injury.'"

66.    The Underlying Complaint does not allege an "occurrence" for purposes of the Umbrella Policy.

67.    The Umbrella Policy defines "bodily injury" as "bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury,

including care, loss of services or death resulting from any of these at any time." See Exhibit B.

68.    The Underlying Complaint does not allege "bodily injury" as described in the Umbrella Policy.

69.    "Personal and advertising injury" means "injury, including 'bodily injury', arising out of one or more of the following offenses:

       **a.**    False arrest, detention or imprisonment;

       **b.**    Malicious prosecution;

       **c.**    Abuse of process;

       **d.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

       **e.**    Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

       **f.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

       **g.**    The use of another's advertising ideas in your 'advertisement';

       **h.**    Infringing upon another's copyright, trade dress or slogan in your 'advertisement';  or

       **i.**    Discrimination, unless insurance coverage therefor is prohibited by law or statute."

***

See Exhibit B.

70.    The Underlying Lawsuit does not allege anything that falls within the enumerated offenses that comprise the definition of "personal and advertising injury."

25

71.     The Umbrella Policy defines "property damage" as:

    a.     Physical injury to or destruction of tangible property including all resulting loss of use.  All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

    b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

72.     The Underlying Complaint does not allege "property damage" under the Umbrella Policy.

73.     Economic damages alleged in the Underlying Lawsuit do not comprise "property damage."

74.     Even if the Underlying Complaint had alleged an "occurrence" that caused "bodily injury", "personal and advertising injury" or "property damage," several exclusions would apply.

75.     The "Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights" exclusion applies because the Underlying Lawsuit alleges, among other things, that BENZEL'S knowingly deprived RANIERI and the other Class members of the benefit of their bargain when they bought the Product that was not what BENZEL'S represented it to be as "All Natural"  and  BENZEL'S violated RANIERI'S statutory rights under the Magnuson-Moss Warranty Act.

76.     The "Damage to Your Product" exclusion applies insofar as the Umbrella Policy defines "your product" to mean "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by (a) You," and also includes

"[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'"

77.     The "Damage to Your Product" exclusion applies because the Underlying Lawsuit is premised upon "[w]arranties or representations made [by BENZEL'S]. . .with respect to the fitness, quality, performance or use of [BENZEL'S] product."

78.     The "Distribution of Material in Violation of Statutes" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S violated Florida's Deceptive and Unfair Trade Practices Act and the Magnuson-Moss Warranty Act.

79.     The "Expected or Intended Injury" exclusion applies because the Underlying Lawsuit alleges that BENZEL's "knew" and "intended" that consumers would pay a price premium for the Product over comparable products that are not labeled "All Natural."

80.     The "Falsity, Prior Publication, Criminal Act and Medial and Internet Type Businesses" exclusion applies because the Underlying Lawsuit alleges that BENZEL'S represented that the Product was "All Natural" when BENZEL'S knew it was not.

WHEREFORE, CIC seeks a judgment in its favor, declaring and adjudicating that the Umbrella Policy does not provide insurance coverage against the Underlying Lawsuit so CIC has no duty to defend and no duty to indemnify BENZEL'S with respect to the Underlying Lawsuit.

## Conclusion

WHEREFORE, Plaintiff, CIC, requests this Court to enter judgment in its favor and against Defendants as outlined in the separate counts above and such other and further relief this Court deems just and proper.

27

Respectfully submitted,


_s/ Ryan K. Hilton_____
R. STEVEN RAWLS, ESQ.
Florida Bar No.:  0938254
srawls@butler.legal
RYAN K. HILTON, ESQ.
Florida Bar No.: 0304610
rhilton@butler.legal
Secondary:  eservice@butler.legal
BUTLER WEIHMULLER KATZ CRAIG LLP
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:     (813) 281-0900
Attorneys for Plaintiff, The Cincinnati Insurance
Company